UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL SPATARO,

                         Petitioner,             10 CV 2668 (SJ)

     - against -                    <u>MEMORANDUM AND ORDER</u>

UNITED STATES OF AMERICA,

                         Respondent.
----------------------------------------------------------X
A P P E A R A N C E S:

MICHAEL H. SOROKA, ESQ.
300 Old Country Road
Suite 341
Mineola, NY 11501

Attorney for Petitioner

CHARLES J. HYNES, ESQ.
Kings County District Attorney
Renaissance Plaza
350 Jay Street
Brooklyn, New York 11201-2908
By:    Leonard Joblove, Esq.
        Shalom J. Twersky, Esq.
        Assistant District Attorneys
Attorneys for Respondent

JOHNSON, Senior District Judge:

Petitioner Michael Spataro ("Petitioner") has petitioned this Court for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2255 ("§ 2255"), requesting that the Court vacate, set aside, or

correct the conviction and sentence imposed under criminal docket number 04-cr-911 (SJ).  For

the reasons stated below, the petition for habeas corpus is denied.

**BACKGROUND**

I. **Prior Proceedings**

Petitioner and several co-defendants were originally indicted on October 13, 2004, in a

sealed indictment charging various criminal conspiracies related to organized crime.  On January

30, 2006, petitioner went to trial with co-defendant Carmine DeRoss on a superceding

indictment filed December 15, 2005.[1]  Petitioner was alleged to have participated in a conspiracy

to murder Joseph Campanella, by serving as a messenger between other conspirators and by

driving the shooter to the location of the attempted murder.  Petitioner was represented at trial by

attorney Thomas R. Ashley (hereinafter "Ashley" or "Counsel").  The case was prosecuted by

Assistant United States Attorneys Thomas Joseph Siegal ("Siegel") and Deborah Sue Mayer.

The evidence at trial consisted of witness testimony, telephone records, audio recordings,

and photographs.  It showed that, on July 16, 2001, Joseph Campanella, an alleged soldier in the

Colombo crime family, was shot by Vincent DeMartino from a car driven by Giovanni Floridia.[2]

Floridia testified that petitioner acted as a messenger between DeMartino and Floridia and other

members of the Colombo family.  (Tr. at 476.)  Floridia testified that he called DeMartino the

morning of July 16, 2001 (Tr. at 480-83), and that DeMartino arrived about 30-45 minutes later

and told him that he had been driven there by Spataro (Tr. at 483-85).

---

[1] The original indictment also charged Alphonse Persico and Jackie DeRoss.  On September 9, 2005, the Court
granted petitioner's motion to sever his trial from that of Persico and Jackie DeRoss, who were facing death-eligible
counts on other charges.  Persico and Jackie DeRoss were ultimately acquitted of involvement in the Campanella
shooting, but convicted on other charges.  (Pet. at 2.)

[2] Floridia and DeMartino were convicted of the attempted murder in 2004.  After his conviction, Floridia entered
into a cooperation agreement with the government in which he agreed to testify against Petitioner, Persico, and both
Jackie and Carmine DeRoss.  See Pet. at 2.

Two FBI Special Agents testified. One of them, James DeStefano testified to telephone records showing calls made between payphones near the scene of the shooting and phones registered or attributed to petitioner and other conspirators, including multiple calls made on the day of the shooting. (Tr. at 747-752-54, 756.) In particular, witnesses highlighted a 9:32 a.m. call made from a payphone on Shore Parkway to DeMartino's cell phone. (Tr. at 482-83, 776-771.) DeStefano admitted on cross-examination that he had no evidence indicating direct telephone contact between Floridia and Petitioner or DeMartino and Petitioner on the morning of July 16. (Tr. at 771-772.) DeStefano did testify to a series of telephone calls made to Petitioner's mobile phone in the afternoon of July 16, 2001 at 2:31, 2:36, 2:39, 2:46 and 2:50. (Tr. at 756-757.) Each call was one unit long, which the witness acknowledged could be any duration up to 60 seconds. (Tr. at 775.) Ashley questioned him closely about whether the telephone records indicated the actual duration of the calls or whether they were even answered. DeStefano acknowledged that he had no information about the duration of the calls or whether they had connected to voice mail or a person. (Tr. at 773-78.)

Special Agent Gary Pontecorvo testified that he had driven himself from the location of the payphone to Spataro's auto body shop in approximately 16 minutes. (Tr. at 967-69.)

Michael Rosen, defense counsel for petitioner's co-defendant, DeMartino, called witnesses Joseph Forlizzi and Marshall Gergenti, who testified about plumbing supplies and work that they did at Narrows Auto Body shop during the week of the shooting. (Tr. at 865-880.) In summation, Rosen suggested that this work was the reason for the multiple telephone calls between Spataro and DeMartino in the days before the shooting. (Tr. at 1062.)

Petitioner presented an alibi defense, based entirely on the testimony of Lisa Ida, a customer at the Narrows Auto Body shop, which was run by Petitioner. Prior to trial, Petitioner

3

submitted alibi notices for witness Ida.  The first notice, submitted on December 29, 2005,

indicated that witness Ida would state that she was with Spataro at Narrows Body shop between

10:15 and 11:30 a.m.  (See Dec. 29, 2005 Letter from Thomas Ashley to Thomas Seigel, No. 04-

cr-911, ECF Entry #125.) A second letter, dated January 14, 2006, revised the time

approximation to 9:30 to 10:30 a.m.  (See Jan. 14, 2006 Letter from Thomas Ashley to Thomas

Seigel, No. 04-cr-911, ECF Entry #134).  At trial, Ida initially testified that she arrived at

approximately 9:45 a.m. and left at approximately 11 a.m.  (Tr. at 846, 851.)  She also identified

an "authorization to repair" form from Narrows Auto Body shop that she had signed, according

to the document, on July 16, 2001 at 10:30 a.m.  (Tr. at 850, 863.)  She stated that she was in

petitioner's presence for about an hour, discussing what would happen to her car.  (Tr. at 852.)

On cross-examination, Ida stated that she left her home at approximately 9:20 a.m. and

estimated that it took her about 25-30 minutes to drive, find parking, and walk to the shop.  (Tr.

at 855-56.)  Then, the prosecutor confronted her with her home telephone records, which

indicated that she called the Narrows Auto Body shop from her home at 8:45 a.m. and again at

9:51 a.m.  (Tr. at 861.)  Ashley made a contemporaneous objection to the introduction of these

records and the government's failure to provide them in advance.  (Tr. at 858.)  The government

asserted that, under Rule 16, it was not required to produce evidence that it intended to use on

the defendant's case, but was only required to produce documents it intended to use in its case in

chief.  (Id.)  The Court denied the Defense application to preclude the use of the telephone

records.  (Id.)  Subsequently, Ida revised her arrival time estimate to approximately 10:30 a.m.,

the time that was listed on the authorization form.  (Tr. at 863.)

The Defense also attacked Floridia's credibility through extensive cross-examination

about his past criminal history, his possible motives to lie, and multiple specific lies made to

Colombo family members and the police. (Tr. at 518-24, 547-50). Ashley attempted to call a witness, Wilson Afanador, who had testified for the government in the prior trial against Floridia and DeMartino. Afanador had previously testified about his observations of Floridia's vehicle on July 16, 2001, and Counsel stated that Afanador's testimony would contradict some of the factual statements in Floridia's trial testimony. (Tr. at 611-19, 895-96.) Afanador appeared at court on Friday, February 3, 2006, the date indicated on his subpoena, but the trial had been adjourned until Monday. When Afanador appeared, Siegel, the prosecuting attorney, stated on the record: "Unless and until the Court directs otherwise or unless and until he gets a subpoena for a different date he doesn't have to come back." (Feb. 3, 2006 Tr. at 4.) When Siegel asked the Court, "he doesn't have to come back then?" the Court concurred. (Id.) When Ashely, who was not in court on the Friday when Afanador appeared, learned about Afanador's appearance and that he had been excused from further appearance, he noted his objections to the Court, particularly the role played by Siegel in suggesting that Afanador need not come back. (Tr. at 612, 618.) Counsel later attempted to serve Afanador with another subpoena to appear, but told the Court that Afanador had thrown the subpoena on the ground. (Tr. at 821.) Another subpoena was served on February 7, 2006, but Afanador did not appear. (Tr. at 892, 957.) Counsel asked the Court to declare him an unavailable witness and to allow the introduction of his sworn testimony from the previous trial. (Tr. at 619-620, 910, 914.) The Court agreed to permit the introduction of his prior testimony, so long as both defendants agreed to waive their right to confront the witness. Each defendant waived his right to confront the witness, and the testimony was admitted in the form of a transcript that was admitted into evidence and available to the jury. (Tr. at 959, 967.)

In summation, the government attacked petitioner's alibi defense. Siegel used Ida's

revised testimony that she met with petitioner at 10:30 to suggest that petitioner had already

dropped off DeMartino as part of the murder conspiracy and had returned to the shop. (Tr. at

1003.) In his summation, petitioner's Counsel attempted to rehabilitate Ida's alibi evidence and

argued that Floridia's testimony lacked credibility. (Tr. at 1073-1120.) He also highlighted the

telephone records and noted that each of the phone calls made to Petitioner was less than one

minute long. He suggested that the frequency of the calls suggested that the attempts to connect

had been unsuccessful. (Tr. at 1077, 1090.)

The Defense and the Prosecution each argued that the admitted transcript of Afanador's

prior testimony supported their version of events. Ashley argued that the government had

changed the theory of the case between trials. (Tr. at 1107.) He claimed that Afanador's prior

testimony challenged Floridia's trial testimony regarding when and where he and DeMartino

began watching Campanella on July 16, 2001. (Tr. at 1104-09.) In his summation, Siegel

argued that Afanador's prior testimony corroborated Floridia's account in the important aspects

and dismissed the discrepancy in times as an estimate. (Tr. at 1121-23.)

The jury convicted petitioner of Conspiracy to Commit Murder in Aid of Racketeering

and additional weapons charges.[3] Petitioner filed motions for acquittal and for a new trial

pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, which the Court denied

on July 10, 2006. United States v. Spataro, No. 04-cr-911 (SJ), 2006 WL 2010788; ECF Entry #

196 and 244.) The Court sentenced him to two terms, of 120 months and 168 months, to run

concurrently, and another term of 170 months to run consecutively to the other terms. (Judgment

entered July 17, 2006, No. 04-cr-911, ECF Entry # 247.)

---

[3] The jury was unable to reach a verdict on DeRoss. He later pled guilty pursuant to a plea agreement on an
unrelated matter.

Petitioner appealed his conviction and sentence to the Court of Appeals for the Second

Circuit, challenging the sufficiency of the evidence and alleging trial court error, prosecutorial

misconduct, and the ineffective assistance of counsel.  He also challenged his sentence as

unreasonable.  The Court of Appeals affirmed the conviction, but remanded for resentencing.

United States v. Persico, 293 Fed. Appx. 24, 2008 WL 4187967 (2d Cir. 2008) (denying the

ineffective assistance of counsel claim without prejudice to its being raised in collateral

proceedings, citing Massaro v. United States, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 155 L. Ed.

2d 714 (2003)).  The Court of Appeals denied a petition for rehearing on February 20, 2009.

(Pet./Aff. ¶ 4.)  Petitioner filed a petition for a writ of certiorari to the United States Supreme

Court, which was denied on June 22, 2009.  Spataro v. United States, 129 S. Ct. 2845, 174 L. Ed.

2d 565 (2009).  This Court resentenced petitioner on October 15, 2009, to 120 months on the

third count, to run consecutively to the 168- and 120-month concurrent sentences previously

imposed on Counts 1 and 2, for a total sentence of 288 months.  (Pet./Aff. (ECF Entry # 1) ¶ 7.)

Petitioner appealed the new sentence, and the Court of Appeals affirmed by Mandate issued

August 8, 2011.

Petitioner also filed a motion for new trial pursuant to Rule 33(b)(1) on February 14,

2009, which this Court denied on August 20, 2009. (No. 04-cr-911, ECF Entry # 845).


## II.  Request for Collateral Relief

In the instant petition for post-conviction relief, petitioner argues that his Trial Counsel

made numerous errors that amounted to ineffective assistance of counsel.  Specifically, he asserts

that Ashley failed to adequately investigate and present a viable alibi defense, failed to

effectively challenge the government's primary witness, and failed to retain a reliable expert

witness regarding certain telephone records.

In support of his Petition, petitioner attaches affidavits and declarations from Lizzette Barretto (Aff. dated Aug. 30, 2009, Exhibit attached to Pet. in No. 10-CV-2668, ECF Entry # 1, pp. 99-100), Counsel Thomas Ashley (Aff. dated May 17, 2010, Exhibit attached to Pet. in No. 10-CV-2668, ECF Entry # 1, pp. 120-27), and Lisa Ida (Declaration, undated, Exhibit attached to Pet. in No. 10-CV-2668, ECF Entry # 1, p. 129).  In her affidavit, Lizzette Barretto, an employee of the auto body shop, stated that she could have testified that petitioner was present in the shop when she sent a fax transmission at 9:33 a.m.  (Barretto Decl. ¶ 6.)  Ida's Declaration states that on July 16, 2001, at 9:51 a.m. she called the auto body shop, "asked for Mr. Spataro, and spoke with a man who said he was Mr. Spataro."  (Ida Decl. ¶ 3.)

In his Affidavit, Ashley explained that he personally did not interview witness Ida until the day she testified, and that her initial interview was conducted by one of his associates. (Ashley Aff. ¶ 7.) The affidavit explains that Counsel did not ask Ida, while she was on the witness stand, to whom she spoke during the 9:51 a.m. call, because he did not know the answer. (Id. ¶ 9.)  Ashley affirmed that he did issue subpoenas for insurance company records related to July 16, 2001, but that he did not take any further action when documents were not produced prior to trial.  (Id. ¶ 12.)

Ashley also acknowledged that he did not personally investigate the crime scene or the area where Petitioner was alleged to have dropped off DeMartino.  (Id. ¶ 13.)  Counsel stated that his efforts to impeach Floridia's testimony did not include questions about Floridia's domestic violence charges, because the Court precluded certain lines of testimony as being unduly prejudicial.  (Id. ¶ 15.)  He also did not investigate the details of a debt Floridia claimed at trial.  (Id. ¶¶ 20-21.)  Ashley acknowledged that he was unable to secure the presence and live

testimony of witness Wilson Afanador, whose testimony may have contradicted Floridia's account. (Id. ¶¶ 22-23.)

Ashley's Affidavit also described his efforts to challenge the government's telephone evidence. He stated that he initially sought to introduce Ben Levitan as an expert witness on telephone records. However, the government objected to the expert's credentials and proposed testimony and asked for a <u>Daubert</u> hearing. Counsel stated that he withdrew the proposed witness and failed to secure the testimony of another telephone expert. (Id. ¶¶ 25-31). If called, an expert could have testified that the records did not indicate whether the multiple calls were connected. (Id. ¶¶ 25.)

## DISCUSSION

### I. <u>Procedural Issues and Standard of Review</u>

To qualify for relief under 28 U.S.C. § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotations and citations marks omitted). To meet this standard, the constitutional error must have had a "substantial and injurious effect" on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 62 (1993) (applying this standard of review to habeas petitions from state prisoners); <u>Underwood v. United States</u>, 166 F.3d 84, 87 (2d Cir. 1999) (<u>Brecht</u> standard applies to § 2255

petitions).

Habeas petitions are governed by strict procedural rules.  Most claims must first be

exhausted by raising them on direct appeal.  United States v. Frady, 456 U.S. 152, 165 (1982);

Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  "Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either cause and actual prejudice, or that he is actually

innocent."  Bousley v. United States, 523 U.S. 614, 622 (1998) (citation omitted).  However, the

procedural default rule does not apply to claims of ineffective assistance of counsel, which "may

be brought in a collateral proceeding under § 2255 whether or not the petitioner could have

raised the claim on direct appeal."  Massaro v. United States, 538 U.S. 500, 504 (2003).

A petition for habeas corpus relief must also be timely.  The Antiterrorism and Effective

Death Penalty Act established a one-year statute of limitations for filing a petition.  In most

cases, the limitations period runs from "the date on which the judgment of conviction becomes

final."  28 U.S.C. § 2255(f)(1).  A conviction becomes "final" when the Supreme Court "affirms

a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when

the time for filing a certiorari petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003).

In this case, petitioner's conviction became final on June 22, 2009, when the Supreme Court

denied certiorari.  He filed the instant petition on June 11, 2010, just within the limitations

period.


## II.  Ineffective Assistance of Counsel

### A. Standard

The Sixth Amendment guarantees a defendant's right to counsel, including the right to

effective counsel. In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test to

determine whether counsel's assistance was ineffective. First, a petitioner must show that

counsel's performance "fell below an objective standard of reasonableness" under "prevailing

professional norms." 466 U.S. 668, 687-88 (1984). Second, the deficient performance must be

shown to be prejudicial. <u>Id.</u>, at 691-92. This second prong requires the petitioner to establish

that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the

proceeding would have been different." <u>Id.</u>, at 694. The prejudicial effect of counsel's

ineffective performance may depend on the strength of the evidence against the defendant:

Counsel's inadequate representation may not be grounds for habeas relief where the conviction

is supported by overwhelming evidence of guilt, whereas "a verdict or conclusion only weakly

supported by the record is more likely to have been affected by errors than one with

overwhelming record support." <u>Lindstadt v. Keane</u>, 239 F.3d 191, 204 (2d Cir. 2001) (internal

citations and quotation marks omitted).

     A petitioner must prove both <u>Strickland</u> prongs, and a failure of either will defeat the

claim. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address

both components of the inquiry if the defendant makes an insufficient showing on one. In

particular, a court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it

is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

     In considering the reasonableness of counsel's performance, the court must consider the

facts of the particular case, viewed as of the time of counsel's conduct, and considered within the

wide range of professionally competent assistance. <u>Id.</u> at 690. The court "should recognize that

counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. Just because a chosen strategy was not successful does not make the strategic choice unreasonable or give cause for the court to second-guess the attorney's judgment. Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983). However, the Second Circuit has noted that "if certain omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness, we would find the quality of representation sufficiently deficient to grant the writ." Eze v. Senkowski, 321 F.3d 110, 112-113 (2d Cir. 2003).

This standard applies to counsel's duty to investigate. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. A decision to investigate certain paths and not others or not to investigate a possible direction "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. The duty to investigate "does not, however, compel defense counsel to investigate comprehensively every lead or possible defense, or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted).

Likewise, courts must tread carefully in considering trial counsels' decisions to call particular witnesses. "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam). The failure to call an expert witness could constitute ineffective assistance of counsel where the expert testimony "would rebut the only evidence linking a defendant to the crime, or where the evidence of a defendant's guilt is thin and relies

heavily on expert testimony." Hodges v. Bezio, No. 09–CV–3402 (ENV), 2012 WL 607659, at

*10 (E.D.N.Y. Feb. 24, 2012), citing Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005).


### B. Alibi Defense

Petitioner argues that Ashley was ineffective because of his failure to present a complete

and convincing alibi for the relevant time period. Petitioner retrospectively argues that Counsel

should have more thoroughly investigated his alibi witness, Lisa Ida, by searching her phone

records and personally interviewing her. Petitioner also suggests that Ashley should have called

an additional witness, Lizette Barretto and sought out other evidence of his presence in the auto

body shop during the relevant time period.

Witness Ida testified at trial that she saw petitioner at Narrows Auto Body shop around

the time that petitioner was alleged to be talking and meeting with co-conspirators. However,

her initial testimony that she was with petitioner from approximately 9:45-11 a.m. was

impeached on cross-examination, after confrontation with her telephone records showing a call

from her home to the shop at 9:51 a.m. Her revised testimony that she was with petitioner

beginning at approximately 10:30 a.m. left petitioner with no alibi for the period between 10 a.m.

and 10:30 a.m.

Although Ashley did not himself interview Ida prior to her trial testimony, his associate

did. The Court finds that it was reasonable for Counsel to rely on his associate to conduct pre-

trial witness interviews. Although Ashley was surprised when the government produced Ida's

telephone records and she revised her time estimates, it was not unreasonable to rely on her

memory of the relevant events and time period.

Petitioner now suggests that Ashley might have mitigated this hole in his alibi, by

questioning Ida about the 9:51 a.m. telephone call to the auto body shop while she was on the stand. Petitioner speculates that, if asked, Ida could have testified that she spoke to somebody whom she believed to be Spataro. However, even if Ida had so testified, that evidence would not have been conclusive either that Spataro was in the shop at 9:51 a.m. or that he could not have left after the phone call, dropped DeMartino at the rendevous spot, and returned in time to meet her at 10:30 a.m. Although the admission of Ida's telephone records and subsequent revision in her testimony undermined petitioner's alibi, Ashley's initial reliance on her memory and the statements she made to his associate was not unreasonable at the time. Had Ashley narrowed down her testimony to the correct time frame in advance of trial, he might have avoided the surprise. But it is difficult to speculate what he could have done to fix this gap in the alibi. Once the time-frame was revised, Ashley attempted to mitigate the damage by focusing the jury's attention on the time period that was covered. Petitioner now argues that "[i]f properly handled, Ida would have provided a viable alibi." (Pet.'s Reply Mem. at 11.) Given the documentary evidence of the 9:51 a.m. phone call and the 10:30 a.m. time listed on the shop form, it is not clear how her testimony could have provided the alibi petitioner needed.

Petitioner also argues that Ashley should have called Lizzette Barretto as an additional alibi witness. In her affidavit, Barretto stated that she could have testified that petitioner was likely present when she sent a fax transmission at 9:33 a.m. This proposed testimony, even if persuasive, would not have contradicted Floridia's testimony that Spataro dropped DeMartino within 30-45 minutes of the 9:32 a.m. payphone call between DeMartino and Floridia. At best, it would have left an approximate one-hour time period between 9:33 a.m. and 10:30 a.m. unaccounted for. The Court concludes that Ashley's decision not to call this witness may have been a sound strategic choice.

14

Petitioner also claims that he asked Ashley to seek out insurance adjusters and other individuals who may have been in the shop on the day of the shooting, in the hope that they would have photographs or other records placing petitioner in the shop at certain times. (Pet./Aff. ¶ 15.) The Court finds that Counsel's decision not to aggressively pursue such speculative sources was not unreasonable. Strickland does not require trial counsel to investigate every possible lead. At the time, Ida's proposed testimony may have appeared to provide the most complete and most credible alibi defense available. Accordingly, it may well have been a reasonable strategic decision to focus on the expected testimony of witness Lisa Ida. The Court cannot find that Counsel's performance "fell below an objective standard of reasonableness" as it relates to the presentation of an alibi defense. Moreover, petitioner has not shown how any one of these alleged omissions would have been likely to establish a better alibi defense and thereby influence the outcome of the trial.

### C. Investigation of the Crime Scene

Petitioner now argues that Trial Counsel was ineffective because he failed to investigate the locations where the criminal conspiracy was alleged to have occurred. He insists that had Ashley understood the layout of the area, he could have argued that it was unnecessary for petitioner or anyone else to drop off DeMartino to meet Floridia a few blocks from where DeMartino's car was parked. (Pet./Aff. ¶ 25.) Petitioner does not argue that the layout made it impossible for him to have been involved; just that it would have permitted Ashley to argue that it would be unlikely.

The Court finds this argument to be unpersuasive. As previously noted, Counsel is not required to investigate every possible theory or defense. In this case, petitioner can demonstrate

no prejudice in Ashley's failure to investigate the proximity of the drop-off point and the location of DeMartino's car or to present this theory to the jury. Government witnesses testified that Spataro dropped off DeMartino to rendezvous with Floridia. Floridia testified that Spataro frequently used different cars, often belonging to clients of the auto body shop, in order to avoid law enforcement notice. (Tr. at 485.) Petitioner's assertion that the locations were four blocks distant from each other does not challenge the credibility of Floridia's statements. The Court finds that Counsel's failure to pursue this potential line of investigation is not objectively unreasonable and did not cause any prejudice to petitioner's defense.

### D. Impeachment of Cooperating Witness Floridia

Petitioner further argues that Trial Counsel was ineffective because he failed to effectively impeach Floridia's credibility by challenging certain factual assertions. Petitioner suggests that Ashley could have challenged Floridia's claim that "only 'sanctioned' mob hits were permissible" by presenting an expert about "unsanctioned" mob hits. (Pet./Aff. ¶ 30.) He notes that such an expert was called at the related trial of Persico and DeRoss, and that the expert testified that unsanctioned mob hits do occur. (Id.) Petitioner also argues that Ashley should have investigated additional factual details in order to challenge Floridia's testimony about the reasons for his return to New York City, the location of a pay phone, and the disposal of the weapon used in the murder attempt. (Id. ¶¶ 31-34.)

As noted above, defense counsel has a duty to investigate, but cannot be expected to investigate every possible detail. The Record at trial shows that Ashley investigated other aspects of Floridia's testimony and consistently sought to cast doubt on Floridia's veracity. He vigorously cross-examined this witness about his past criminal history, his possible incentives to

lie, and multiple specific lies made to Colombo family members and the police. (Tr. at 518-24, 547-48). Ashley also attempted to impeach Floridia's version of events by introducing Afanador's testimony from the earlier trial, which apparently highlighted minor discrepancies in Floridia's testimony, including whether the license plate was covered and the length of time during which Floridia was stalking Campanella on the day of the shooting. (Tr. at 615-19.) Any additional impeachment evidence would have been cumulative.

Moreover, none of the specific impeachment evidence that petitioner complains was omitted from his defense was likely to have been compelling. The jury didn't need "an expert on the mafia" to cast doubt on Floridia's claim that sanctioned mob hits occurred. It is also unlikely that the jury would have been swayed by testimony that a scuba diver was unable to locate a weapon that Floridia claimed had been thrown into Caesar's Bay. Accordingly, the Court finds that Counsel's decision not to investigate and present this possible impeachment evidence was unlikely to have had an impact on the outcome of the trial.

### E. Failure to Call Approved Telephone Expert

Petitioner also asserts that Ashley was ineffective for failing to call a reputable telephone expert. Petitioner states that the government presented telephone records showing numerous phone calls from other alleged conspirators to petitioner's mobile phone as evidence of petitioner's messenger role in the murder conspiracy. Petitioner asserts that a telephone expert would have testified that the records indicating numerous one-minute calls to his mobile phone could be showing unanswered calls, not completed calls. He also suggests that an expert could have attempted to establish the location of the cellular phone at the time of those calls.

Ashley initially secured the services of an expert, Ben Levitan, whom he expected to

challenge the length and frequency of the calls made to petitioner's cell phone. (Ashley Aff. ¶ 25.) However, when the government challenged Levitan's credentials and proposed testimony prior to trial, Ashley withdrew the proposed expert and did not replace him. (Id. ¶¶ 27, 29.) Petitioner now argues that Ashley should have more thoroughly investigated Levitan's credentials in advance and should have retained an unimpeachable witness to replace Levitan.

Petitioner has not demonstrated any prejudice arising from this omission. In summation, Ashley argued that the evidence of multiple phone calls, all made during a short period and each less than one minute, was likely an indication that the calls were not answered. It doesn't require an expert to make this common-sense argument. Moreover, Counsel reminded the jury that the content of the telephone calls was unknown, and suggested that they should not construe the calls as evidence of a conspiracy.[4] Petitioner now argues that an expert could have testified to the location of the mobile phone while the calls were made. However, he has not explained how an expert could have determined that information from the limited records introduced by the government or suggested that additional information was available. Moreover, it is unclear how such testimony would have supported the Defense. Petitioner's alibi defense argued that he was at the auto body shop before and during the shooting. The location of petitioner or his mobile phone at 2:31, 2:36, 2:39, 2:46 and 2:50 in the afternoon have little bearing on the government's argument or petitioner's defense. As petitioner cannot show prejudice resulting from Counsel's failure to call a telephone expert, this omission cannot serve as the basis for an ineffective assistance of counsel claim.

---

[4]   Counsel for co-defendant DeMartino presented evidence suggesting cooperation between DeMartino and Spataro on a plumbing project at Narrows Auto Body Shop, and argued that the multiple telephone calls could be related to that transaction.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied. The Clerk of Court is directed to close the case. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____/s_____
Sterling Johnson, Jr., U.S.D.J.

Dated: February 19, 2013
       Brooklyn, New York